UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
FINANCIAL LIFE SERVICES, LLC,

                Plaintiff(s),

-against-

N. BERGMAN INSURANCE TRUST,

                Defendant(s).
---------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
CV 10-4499 (DRH)(WDW)

**WILLIAM D. WALL, United States Magistrate Judge:**

       This matter was referred to the undersigned by District Judge Hurley for report and recommendation of the damages to be awarded to plaintiff Financial Life Services, LLC ("FLS") on the entry of default judgment against defendant N. Bergman Insurance Trust ("Bergman Trust"). For the reasons set forth herein, it is recommended that plaintiff be awarded $408,700.00 in damages (plus additional amounts conditional upon submission of proper documentation), interest in the amount of $40,671.47 in interest through July 15, 2011 (plus interest on additional damages amounts), contractual termination charge of $5,000.00, attorneys' fees in the amount of $17,999.50, and costs totaling $894.65. In addition, it is recommended that ownership of the Policy at issue revert to defendant, and that plaintiff maintain a lien upon that Policy.

## BACKGROUND

       Plaintiff filed a complaint on October 4, 2010 alleging breach of contract. *See* Compl., Docket Entry ("DE") [1]. Defendant did not answer or otherwise appear in the action. The Clerk of the Court noted the default, *see* DE [5], and on January 19, 2011, plaintiff moved for a default judgment. *See* DE [6]. Judge Hurley entered the default and referred the matter to the undersigned to issue a report and recommendation regarding damages. Elec. Order of 2/7/11.

At the court's direction, plaintiff submitted supplemental papers. *See* DE [11]. No papers have been submitted by defendant.

## DISCUSSION

### I. Legal Standards

It is axiomatic that the "effect of a default is to deem as true the well-pled allegations of the complaint that are relevant to liability." *Scafa-Tornabene Art Pub. Co., Inc. v. Pride Prod. Corp.,* 2007 WL 2469453, at *2 (S.D.N.Y. June 4, 2007) (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir. 2004)). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Abramov,* 980 F. Supp. 107, 111 (E.D.N.Y. 1997).

### II. Established Facts and Liability

This diversity action for breach of contract arises from a Life Insurance Policy Purchase and Sales Agreement ("the Agreement") that FLS and the Berman Trust entered into on November 4, 2009.[1] As a result of defendant's default, the following facts in the complaint are deemed admitted and establish defendant's liability under New York state law:

FLS is a Delaware Limited Liability Company with its principal office located at 60 Long Ridge Road Suite 205, Stamford, Connecticut 06902. Compl. ¶ 2. Defendant is a trust located at 1247 E. 13th Street, Brooklyn, New York 11230. *Id.* ¶ 3. Nachman Bergman is both the trustee and the beneficiary of the Bergman Trust. *Id* ¶ 5. Defendant owned the Transamerica

---

[1] A copy of the Agreement is attached as Exhibit A to the Complaint.

Occidental Life Insurance Company's ("Transamerica") life insurance policy numbered 650060001 (the "Policy"), which insured the life of Nancy Bergman for the amount of $10,000,000. *Id* ¶ 4. By Agreement dated November 4, 2009, the Bergman Trust agreed to sell the Policy to FLS. Although the Policy was issued in the state of New Jersey, the parties agreed that New York state law would govern the Agreement. Agreement ¶17.

The following provisions were consented to in the Agreement: (1) the Policy was to be transferred to FLS for the price of $1,350,000, Compl. ¶ 9; (2) verification of representations and warranties made by the defendant was to be completed after the execution of the Agreement and assignment of the Policy to FLS, *id.* ¶ 14; (3) FLS had the option to pay premiums to maintain the Policy during the verification period and deduct the advanced premiums from the purchase price, *id.* ¶ 14; (4) FLS had the option to require Defendant repurchase the Policy, plus any premiums paid by FLS after the Policy was purchased, if a representation or warranty was found to be materially inaccurate. *Id.* ¶ 11.

In accordance with the Agreement, Defendant requested a change of ownership of the Policy from the insurer, and the insurer notified FLS that it had been recognized and accepted as the new owner or beneficiary of the Policy. *Id.* ¶ 16. The complaint does not indicate when the change occurred, but alleges that FLS is the current lawful owner of the Policy. *Id.*

On November 16, 2009, subsequent to the change of ownership, Transamerica notified the defendant that the Policy had entered a grace period and could potentially lapse. *Id.* ¶ 17. By allowing the Policy to enter a grace period, defendant breached paragraph 7(cc) of the Agreement. As permitted under paragraph 7(cc), FLS remitted $64,500 in premiums to Transamerica to maintain the Policy. *Id.* ¶ 18.

In furtherance of its verification regarding the representations and warranties made by the

defendant, FLS submitted the insured's medical records to 21st Services and obtained a new report, dated December 16, 2009, which contained a materially longer life expectancy projection than the July 31, 2009 report by 21st Services that was provided to FLS by the defendant prior to execution of the Agreement. *Id.* ¶ 19. As the estimated life expectancy of the insured is critical to determining the value of a life insurance policy, the discrepancy between the two life expectancy projections constituted "a material inconsistency." *Id.* ¶¶19-20.

Based upon defendant's inaction allowing the Policy to enter a grace period, as well as the material inconsistency created by the longer life expectancy report, FLS elected to pursue various contractual remedies. The Agreement provided that FLS could elect to reduce the gross purchase price by $675,000.00 if the Bergman Trust made materially inaccurate representations or warranties. Agreement ¶7(aa). It further provided that FLS could elect to reduce the gross purchase price by the amount equal to premiums advanced by FLS to maintain the Policy if it entered a grace period. *Id.* ¶7(cc). Based on these provisions, FLS tendered the purchase price, reduced by $675,000 pursuant to paragraph 7(aa), and by $64,500 pursuant to paragraph 7(cc). Compl. ¶24. Defendant refused to accept the reduced purchase price, *id* ¶ 25, at which point FLS offered to rescind the transaction if Defendant was willing to reimburse FLS for the $64,500 premium it had already paid to maintain the Policy, *id.* ¶ 26. Defendant refused to repay the premiums, *id*. ¶ 27. FLS made a second attempt to purchase the Policy for a reduced price by wiring $610,500 to defendant on March 10, but the Bergman Trust refused to accept the funds. *Id.* ¶¶ 28-29.

Following Defendant's second rejection of the reduced purchase price, FLS became aware that the funds used to purchase the Policy were not derived from the Bergman family, but rather came from multiple outside investors. *Id.* ¶ 35. Upon further investigation, FLS made a

determination that the policy was a stranger-originated life insurance policy ("STOLI"). *Id.* ¶ 36. STOLI policies can be voided, are illegal in some states, and their marketability and value is affected. *Id.* ¶36. Paragraph 7(bb) was of the Agreement was intended to safeguard FLS from the purchase of any STOLI policies. *Id.* ¶ 37. FLS had originally relied on an affidavit provided by Nachman Bergman, the beneficiary of the trust, that the capital used to purchase the Policy was compiled from family funds. *Id.* ¶¶ 33-34. Since the purchase of the Policy was funded by outside investors, defendant breached paragraph 7(bb) of the Agreement, and Nachman Bergman's representation that the purchase was funded by family assets constituted a material misrepresentation or false statement under paragraph 7(k) of the Agreement. *Id.* ¶38.

FLS fulfilled all its duties under the Agreement, *id.* ¶ 40, and after the discovery that the Policy is a STOLI policy, FLS informed defendant of its election to have the defendant repurchase the Policy pursuant to paragraph 7(k) of the Agreement, *id.* ¶ 42. Defendant has not repurchased the Policy, and in addition, FLS continues to pay the Policy premiums. *Id.*

Plaintiff's complaint clearly sets forth facts that, if true, establish plaintiff's claim for breach of contract. Under New York law, "to state a claim for breach of contract, a Plaintiff must allege the following it its complaint: (1) the existence of a contract; (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to breach." *Chung v. Sano*, No. 10-CV-2301(DLI)(CLP), 2011 U.S. Dist. LEXIS 34989, at * 8 (E.D.N.Y. March 31, 2011) (internal quotation omitted) (quoting *RCN Telecom Svcs., Inc. v. 202 Centre Street Realty LLC*, 156 Fed. Appx. 349, 350-351 (2d Cir. 2005)).

Here, there is substantial evidence that the two parties entered into a contract. Exhibit A of the Complaint is copy of the signed Agreement, which provides for the sale of the Policy by seller, N. Bergman Insurance Trust, to the purchaser, FLS. Next, according to the facts alleged

5

in the complaint, the plaintiff performed its duties under the Agreement. The Agreement required that the purchaser pay a price of $1,350,000.00 less monetary deductions for established conditions precedent under paragraphs 7(aa), 7(bb), and 7(cc). According to the admitted facts, plaintiff paid the premium on the Policy when it entered a grace period, and has been doing so since. In addition, FLS, as permitted by the Agreement, tendered the reduced purchase price when it became clear that the life expectancy report turned over by the defendant was materially inaccurate. As such, plaintiff has established that it performed its duties under the contract.

The complaint also contains sufficient allegations that the Bergman Trust breached its duties under the Agreement. Under the admitted facts of the complaint, defendant consented to sell the Policy to the plaintiff for a price of $1,350,000.00, minus any reductions for various conditions forth in the Agreement, and was willing to give Plaintiff a period of time to verify the representations and warranties made in the sale after the Agreement was signed. Defendant's multiple refusals to accept the reduced purchase price, and its refusal to accept rescission of the contract for a refund of premiums already paid by the plaintiff, constitute a breach of defendant's duties under 7(aa), 7(bb), and 7(cc) of the Agreement. Therefore, defendant Bergman Trust did not perform its portion of the Agreement.

Finally, FLS has adequately alleged that it suffered damages attributable to the breach. Under the terms of the contract, Plaintiff is permitted to rescind the contract and receive the purchase price plus any premiums paid by FLS to maintain the Policy. Since signing the Agreement, Plaintiff has paid hundreds of thousands of dollars in premiums to ensure that the Policy does not lapse. Based on the uncontroverted evidence, plaintiff has satisfied all four factors under New York law, and therefore has stated a valid cause of action for breach of contract.

**III.     Damages, Interest, and Costs**

   A.  Damages

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F. 2d 155, 158 (2d Cir. 1992). To establish damages upon a default, the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatlatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)(citations omitted). Here, the documentary evidence submitted by the plaintiff supports the damages sought. *See Action S.A. v. Marc Rich & Co.,* 951 F. 2d 504, 508 (2d. Cir. 1991).

In the event of a material misrepresentation or breach by Bergman Trust, FLS's remedies are set forth in paragraph 7(k) of the Agreement, which provides, in pertinent part, that FLS in its sole discretion may "require that [Bergman Trust] immediately repurchase the Policy for the Gross Purchase Price, plus (i) Any premiums paid by [FLS] or any other party to the Insurer after purchase of the Policy from [Bergman Trust]. (ii) The Termination Charge; and (iii) Interest . . . ." Agreement ¶7(k) (emphasis in original). I will examine these provisions in turn.

   *1. Repurchase of the Policy*

As permitted in the Agreement, plaintiff seeks an order requiring defendant to repurchase the Policy. There is no evidence in the Complaint to suggest that defendant accepted any money as consideration for the Policy; to the contrary, it is clearly alleged that defendant consistently refused to accept the reduced purchase price tendered by plaintiff. As such, there is no monetary "gross purchase price" for defendant to repay. Under the circumstances, a "repurchase" is

7

simply a change of the ownership of the Policy, reverting back to the previous owner. Accordingly, it is recommended that an order issue directing the insurer, Transatlantic, to change ownership and assignment of the Policy to the Bergman Trust, and that the defendant accept transfer of all the rights, title and interest in and to the Policy.[2]

### 2. Reimbursement of Premiums Paid

Pursuant to the Agreement, the contract provides for the reimbursement of "any premiums paid by Purchaser or any other party to the Insurer after purchase of the Policy from Seller." Agreement ¶ 7(k)(1). Plaintiff has supplied wire transfer histories, copies of checks, and an acknowledgment of receipt of funds by Transatlantic for five premium payments in the total amount of $408,700.00. *See* Krasnerman Aff., Ex. G. FLS also references an additional $115,000.00 premium paid on March 10, 2010, but it has not provided any documentation for that payment. In addition, it is likely that plaintiff has paid, or will pay, additional premiums before judgment is entered.[3] Accordingly, it is recommended that plaintiff be awarded $408,700.00, plus any additional premiums paid for which it provides adequate documentation.

### 3. Termination Charge

Paragraph 7(k) of Agreement provides for recovery of a termination charge. The amount of the termination charge is established in the Agreement as $5,000. Agreement, ¶6. Thus, it is recommended that plaintiff be awarded this amount as well.

---

[2]Although it is far from clear from the papers submitted, plaintiff's proposed judgment suggests that it would prefer to retain ownership of the Policy unless or until defendant satisfies any monetary judgment awarded by the court. While the undersigned recognizes the attractiveness to plaintiff of such a result, there is nothing in the Agreement to support it.

[3]For example, counsel advised by letter that an additional premium in the amount of $86,100.00 was due to be paid on April 10, 2011. *See* DE [11].

B. Interest

The Agreement clearly provides for recovery of prejudgment interest. Plaintiff claims entitlement to pre-judgment interest at the rate of 15%, *see* Compl. ¶47; section 7(k) of the Agreement, however, sets the interest rate "at the lesser of fifteen percent (15%) per annum or the highest rate permitted by applicable law." As such, it is recommended that plaintiff be awarded simple interest at the rate of 9% in accordance with C.P.L.R. § 5004. Below is a calculation as to the interest owed on each documented premium paid, calculated through July 15, 2011.

| Date of Premium Payment | Payment Amount | Interest Owed through 7/15/2011 |
|---|---|---|
| 12/15/2009 | $64,500.00 | $9,176.67 |
| 3/1/2010 | $95,700.00 | $11,822.23 |
| 5/5/2010 | $86,100.00 | $9,256.34 |
| 8/10/2010 | $57,400.00 | $4,798.01 |
| 12/10/2010 | $105,000.00 | $5,618.22 |
| **TOTAL:** | | **$40,671.47** |

Plaintiff should be permitted to submit updated calculations for any additional documented premiums it advanced to Transatlantic, as well as any additional interest accrued through the entry of judgment.

Additionally, under federal law, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. §1961(a). An award of post-judgment interest is mandatory, *see Schipani v. McLeod,* 541 F.3d 158, 165 (2d Cir. 2008) (citation omitted), and thus it is recommended that plaintiff be awarded such interest at the statutory rate prescribed by 28 U.S.C. §1961(a).

C. Attorneys' Fees and Costs

The Agreement allows plaintiff to recover reasonable attorneys' fees incurred in this litigation. Agreement ¶ 10. The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of hours spent and rates charged. *See generally, N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F. 2d 1136 (2d Cir. 1983). A fee application must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended and the dates which the work was performed. *Cruz v. Local Union No. 3 of the IBEW,* 34 F. 3d 1148, 1160-61 (2d Cir. 1994). Ultimately, the court must determine whether the fee sought is "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens v. County of Albany*, 522 F. 3d 182, 184(2d Cir. 2008).

Plaintiff has submitted contemporaneous billing records supporting its request for $17,999.50 in attorneys' fees. A review of the attorney declaration and billing records submitted by plaintiff leads me to conclude that the rates charged are reasonable for work of this sort in this District, and that the numbers of hours expended is not excessive. Counsel provided a thoughtful affirmation detailing reductions made to its bill and to one associate's billed time. Thus, I find that all relevant factors support an award of attorneys' fees in the amount of $17,999.50.

Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, plaintiff is entitled to costs other than attorneys' fees. Plaintiff has provided documentation to support the award of $461.00 in fees for service of process, and $83.65 in other costs. Difficulties serving the defendant resulted in higher than normal service fees, but the court finds the additional costs to be within reason. In addition, I take judicial notice of the $350.00 filing fee in the Eastern

District of New York, and recommend an award of costs totalling $894.65.

D. Equitable Relief

As mentioned earlier, plaintiff apparently suggests that its name remain on the Policy as owner and beneficiary until such time as defendant satisfies any money judgment awarded to plaintiff. This relief is not supported by the Agreement. The Agreement does, however, provide for a security interest in the Policy under some circumstances.

Section 7(y) "grants to Purchase[r] a first priority security interest in the Policy and in the proceeds payable under the Policy as collateral for a loan on the Policy equal to all amounts paid by Purchaser hereunder or pursuant hereto to any party." Agreement ¶7(y). As the court is recommending that FLS's right to rescind the Policy be enforced, the language of the Agreement provides FLS the opportunity to satisfy this judgment with the proceeds of the Policy at payout, if necessary. Accordingly, pursuant to section 7(y) of the Agreement, and as an exercise of this court's discretion, it is recommended that any judgment include a lien on the Policy in favor of FLS.[4]

## CONCLUSION

The undersigned recommends plaintiff be awarded damages, interest, attorney's fees, costs and equitable relief as follows:

- **$408,700.00** in damages for reimbursement of documented premiums paid by FLS, plus any additional premium payments made by FLS to maintain the Policy for which it can submit appropriate documentation;

- **$40,671.47** for pre-judgment interest on the premium payments made by FLS on the Policy, plus interest on additional premium payments for which it provides documentation, through July 15, 2011, plus additional interest through entry of

---

[4] Of course, the lien placed on the Policy does not limit FLS from pursuing other avenues in its attempt to satisfy the judgment.

judgment;

- **$5,000** termination fee;

- **$17,999.50** in attorneys' fees, and **$894.65** for costs and fees;

- an order directing Transatlantic to change ownership of the Policy to Bergman Trust; and

- an order imposing a lien on the Policy in favor of FLS until such time as the judgment is satisfied.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. (6)(a) and 6(d). Failure to file objections within this period waves the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at \*2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      June 27, 2011

                                            /s/ William D. Wall
                                            WILLIAM D. WALL
                                            United States Magistrate Judge