UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FINANCIAL LIFE SERVICES, LLC,

                           Plaintiff,         **MEMORANDUM & ORDER**

  -against-                                    10 CV 4499 (DRH) (WDW)

N. BERGMAN INSURANCE TRUST,

                           Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**HARRIS BEACH PLLC**
Attorneys for Plaintiff
99 Garnsey Road
Pittsford, New York 14534
By:    Douglas Alan Foss, Esq.
        Svetlana Ivy, Esq.

**ALTMAN SCHOCHET LLP**
Attorneys for Defendant
225 Broadway
39th Floor
New York, New York 10007
By:    Mark J. Nussbaum, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff Financial Life Services, LLC ("plaintiff" or "FLS") commenced the present action alleging that defendant N. Bergman Insurance Trust ("defendant" or the "Trust") breached a Life Insurance Policy Purchase and Sales Agreement (the "Agreement") entered into on November 4, 2009. (Compl. ¶ 1.) On February 7, 2011, the Court granted plaintiff's motion for entry of default judgment against defendant and referred the case to Magistrate Judge William D. Wall, pursuant to 28 U.S.C. § 636(b)(3), for a report and recommendation as to damages and attorneys' fees. On June 27, 2011, Judge Wall issued a Report and Recommendation that judgment be entered against defendant in the following amounts: (1) $408,700.00 in damages

(plus additional amounts conditioned upon plaintiff's submission of proper supporting documentation), (2) $40,671.47 in interest through July 15, 2011 (plus additional interest accrued through the entry of judgment, as well as interest on additional damages amounts), (3) post-judgment interest calculated at the statutory rate prescribed by 28 U.S.C. § 1961(a), (4) a contractual Termination Charge of $5,000.00, (5) attorneys' fees in the amount of $17,999.50, and (6) $894.65 in costs. Judge Wall also recommended that the ownership of the life insurance policy at issue in the Agreement "revert to defendant, and that plaintiff maintain a lien upon that Policy." (R&R at 1.)

Plaintiff timely filed objections to Judge Wall's Report and Recommendations ("Pl.'s Obj."). (*See* Docket No. 13.) In response, defendant submitted a document entitled "Defendant's Confirmation of Report and Recommendation and Objections to Plaintiff's Objections to Report and Recommendation" ("Def.'s Resp."). (*See* Docket No. 15.) Plaintiff submitted a reply ("Pl.'s Reply") (*see* docket no. 16) as well as a follow-up letter dated September 16, 2011 (*see* docket no. 17).

For the reasons set forth below, the Court hereby modifies certain portions of Judge Wall's June 27, 2011 Report and Recommendation, and adopts the remainder in its entirety.

## I. *Factual Background*

In the Report and Recommendation, Judge Wall found that the factual allegations in the Complaint were deemed admitted by virtue of defendant's default, and that those admitted facts were sufficient to establish defendant's liability for breach of contract under New York state law. (R&R at 2, 5-6.)

Defendant owned a life insurance policy (the "Policy"), which was issued by

Transamerica Occidental Life Insurance Company ("Transamerica") and insured the life of Nancy Bergman (the "Insured") for the amount of $10,000,000. (Compl. ¶ 4.) On November 4, 2009, the parties entered into the Agreement, which provided that defendant would transfer all of its rights, title, and interest in and to the Policy to plaintiff in exchange for plaintiff's payment of a purchase price of $1,350,000. (*Id.* ¶¶ 8, 9.) The Agreement set forth, however, that plaintiff would not be obligated to pay the purchase price until several "Conditions Precedent" were satisfied. One such Condition Precedent was that plaintiff "verified the accuracy of all material information relied upon by [FLS] in making the offer to [defendant, including] . . . [defendant's] representations, warranties and covenants contained herein." (Compl., Ex. A at 3(c).) The Agreement further provided that verification of defendant's representations and warranties was to be completed after the execution of the Agreement and assignment of the Policy to plaintiff. (Compl. ¶ 14.)

### A. *FLS's Advances of Policy Premiums*

Pursuant to the Agreement, defendant requested a change of ownership of the Policy from Transamerica, which subsequently notified plaintiff that it had been recognized and accepted as the new owner or beneficiary under the Policy.[1] (*Id.* ¶ 16.) According to plaintiff, upon Transamerica's recognition of the change in ownership, FLS became "the lawful owner of the Policy." (*Id.*)

Subsequently, on November 16, 2009, Transamerica notified defendant that the Policy had entered into a grace period and was "in danger of lapsing." (*Id.* ¶ 17.) By permitting the

---

[1] As Judge Wall noted in his Report and Recommendation, it is unclear from the parties' submissions exactly when this change occurred. (*See* R&R at 3.)

Policy to enter a grace period before all the Conditions Precedents were satisfied, defendant breached Section 7(cc) of the Agreement. (*Id.*; R&R at 3.) As expressly authorized by that Section of the Agreement, on December 15, 2009 plaintiff advanced $64,500 in Policy premiums to Transamerica "in order to cure Defendant's breach." (Compl. ¶ 18.) Section 7(cc) further provided that the amount of any premiums so advanced could be deducted from the purchase price. (*Id.* ¶ 13.)

### B. *The Life Expectancy Reports*

Prior to the execution of the Agreement, defendant provided plaintiff with a life expectancy report for the Insured, which was prepared on July 3, 2009 by a vendor called 21st Services. According to plaintiff, it relied on the information contained in this life expectancy report in deciding to enter into the Agreement. (*Id.* ¶ 15.) As part of the Agreement, defendant warranted and represented that all "Essential Information" it provided to plaintiff, including the information in the life expectancy report, was accurate. (*Id.* ¶ 10.)

After the Agreement was executed, plaintiff attempted to verify the various representations and warranties made by defendant. To that end, FLS submitted the Insured's medical records to 21st Services and obtained a second life expectancy report, dated December 16, 2009. (*Id.* ¶ 19.) The second report, however, contained a longer life expectancy projection than was set forth in the original report. (*Id.*) Because an insured's estimated life expectancy "is a critical component to determining the value of a life insurance policy," the difference between the projections contained in the first and second life expectancy reports "was material in the context of the transaction." (*Id.* ¶ 20.)

### C. FLS's Pursuit of Contractual Remedies

The Agreement provided that if defendant made any material representation that proved to have been incorrect when made, FLS could pursue one of two contractual remedies. First, pursuant to Section 7(aa), FLS could choose to reduce the purchase price by $675,000.00 as liquidated damages. In the alternative, FLS could elect (pursuant to Section 7(k)) to require defendant to repurchase the Policy by tendering the purchase price as well as (1) any premiums paid by FLS after the Agreement was entered into, (2) a $5,000.00 Termination Charge, and (3) interest.

Based upon defendant's act of allowing the Policy to enter a grace period as well as making material misrepresentations regarding the Insured's life expectancy, FLS sought to exercise the first option described above; plaintiff tendered to defendant the original purchase price of the Policy reduced by $675,000.00 (the liquidated damages amount set forth in Section 7(aa)), as well as an additional $64,500.00 (the amount of premiums advanced, as provided in Section 7(cc)). (*Id.* ¶ 24.) Defendant refused to accept this reduced purchase price. (*Id.* ¶ 25.)

Subsequently, FLS attempted to exercise its second contractual option by offering to rescind the transaction, pursuant to Section 7(k), if defendant reimbursed FLS for the $64,500.00 it had advanced toward payment of the Policy's premiums. (*Id.* ¶ 26.) Defendant refused to reimburse FLS. (*Id.* ¶ 27.) Thereafter, FLS made a second attempt to tender a reduced purchase price for the Policy by wiring $610,500.00 to defendant on March 10, 2010. (*Id.* ¶ 28.) Defendant refused, however, to accept the wired funds. (*Id.* ¶ 29.)

### D. FLS Learns of the Source of Funding for the Policy

At some point after these events took place, plaintiff learned that the funds used to

purchase the Policy did not come from the Insured's family, as defendant had represented at the time the Agreement was entered into. Instead, the funding apparently came from outside investors. (*Id.* ¶¶ 32-36.) Thus, plaintiff concluded that defendant had breached Section 7(bb) of the Agreement, which prohibited the payment of any premiums by "an entity not closely related to the Insured by blood or marriage." (Compl., Ex. A at 7(bb).) In addition, plaintiff found that defendant's inaccurate statement that the Policy's funding had come from family sources constituted an additional material misrepresentation, and a separate breach of Section 7(k). (Compl. ¶¶ 38, 39.)

## II.     *The Report and Recommendation*

As noted above, Judge Wall concluded that the factual allegations in the Complaint, which were deemed admitted by virtue of defendant's default, established that defendant breached the Agreement. (R&R at 5-6.) Neither party has objected to this portion of the Report and Recommendation. In terms of the relief sought by plaintiff, the Complaint requests that the Court order defendant, "[o]n pain of contempt," to "repurchase the Policy for the amount of $418,700, plus the amount of any and all additional premiums paid by FLS, [as well as] $5,000 for the termination charge . . ., interest of fifteen percent per annum . . ." and attorneys' fees and costs. In its papers submitted to Judge Wall, plaintiff urged him to recommend that the Court "do nothing more than [ ] enforce the plain language of [Section 7(k)] of the Agreement." (Mem. in Supp. of Default J. at 2.)

Turning first to plaintiff's request that defendant be ordered to repurchase the Policy, Judge Wall noted that nothing in the Complaint "suggest[ed] that defendant accepted any money as consideration for the Policy; to the contrary, it is clearly alleged that defendant consistently

refused to accept the reduced purchase price tendered by plaintiff." (R&R at 7.) Judge Wall found that because "there is no monetary 'gross purchase price' for defendant to repay," the "repurchase" sought by plaintiff amounted to no more than "simply a change of ownership of the Policy, reverting back to the previous owner." (*Id.* at 7-8.) Accordingly, Judge Wall recommended that "an order issue directing the insurer [ ] to change ownership and assignment of the Policy to the [defendant] and the defendant accept transfer of all rights, title and interest in and to the Policy." (*Id.* at 8.) In a footnote, Judge Wall took note of plaintiff's suggestion "that it would prefer to retain ownership of the Policy unless or until defendant satisfies any monetary judgment awarded by the court." (*Id.* at 8 n.2.) Judge Wall stated that while he "recognizes the attractiveness to plaintiff of such a result, there is nothing in the Agreement to support it." (*Id.*) Instead, Judge Wall recommended that "any judgment include a lien on the Policy in favor of FLS," pursuant to Section 7(y) of the Agreement. (*Id.* at 11.)

Judge Wall further recommended that plaintiff be awarded monetary damages (which would reimburse FLS for its documented payment of premiums), as well as pre- and post-judgment interest, the Termination Charge, attorneys' fees, and costs as set forth above.

### III.    *Standard of Review*

Rule 72(b) provides that "a district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(B). The Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "The *de novo* review requires the district court neither to 'rehear the contested testimony' nor to 'conduct a new hearing on contested issues.'" *Gutman v.*

7

*Klein*, 2010 WL 4916722, at *1 (E.D.N.Y. Nov. 24, 2010) (quoting *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980)).  Moreover, even on a *de novo* review, a district court will generally "refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance." *Kennedy v. Adamo*, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (quoting *Haynes v. Quality Markets*, 2003 WL 23610575, at *3 (E.D.N.Y. Sept. 22, 2003)) (internal quotation marks and alteration omitted).

## IV.     *Plaintiff's Objections and Defendant's Response*

Plaintiff objects that the Report and Recommendation leaves it "in a position worse than before filing this lawsuit." (Pl.'s Obj. at 2.)  According to plaintiff, before commencing this action, it owned the Policy (an asset "of potentially significant value") and sought an order requiring defendant repurchase that Policy in exchange for monetary amounts that would make plaintiff whole for the premium payments it made. (*See id.*)  Plaintiff contends that the Report and Recommendation would "transfer the Policy back to the Defendant and [ ] leave FLS with a money judgment against Defendant." (*Id.*)  Plaintiff argues that "neither FLS nor the Court has any reason to believe that Defendant is solvent and has assets," and so the "predictable result" of the Report and Recommendation "would be the Policy lapsing when Defendant fails to pay the substantial premiums necessary to keep it in force, leaving FLS with a money judgment against a judgment-proof Defendant and without the Policy as collateral." (*Id.* at 2-3.)  Overall, plaintiff asserts that Judge Wall's "recommendation that the ownership of the Policy revert back to Defendant before Defendant tenders the necessary repurchase price goes against the standard commercial practice that one must tender a purchase price either before obtaining ownership of a

valuable asset or simultaneously with delivery of the asset." (*Id.* at 3 (emphasis deleted).)

Plaintiff asks that the Court modify the Report and Recommendation to insert the following procedure: (1) Upon issuance of the Court's order, FLS would execute, but not deliver, all documentation needed to transfer ownership of the Policy back to defendant, (2) such documentation would be held in escrow, (3) upon defendant's timely tender of any monetary amount owed to FLS, the executed documentation would be released and delivered to defendant and Transamerica, and (4) if the defendant fails to tender the money owed within a finite period of time (i.e., 15 days), the documentation would be destroyed and plaintiff would "be permitted to auction the Policy, as collateral for the amount the Court has directed the Defendant to pay." (*Id.* at 4.) The Court notes that plaintiff did not articulate any concerns about defendant's ability to tender a money award in the motion papers it submitted to Judge Wall, nor did it present the above-recited suggestions to Judge Wall at any point.

For the first time in this action, defendant has appeared and filed a response to plaintiff's objections to the Report and Recommendation. Defendant admits that it "is not in a position to tender the monetary award pursuant to the report until it retains possession of the policy and sells such policy to a third party." (Def.'s Resp. at 1.) Defendant argues, however, that ownership of the Policy should revert to it immediately, and that it will be able to sell the Policy for its full market value within sixty days and use the sale proceeds to satisfy any monetary judgment against it. (*Id.* at 2.) Defendant objects to selling the Policy through an auction as plaintiff suggested, and contends that if an auction method is utilized "the chances of the policy being sold for its true value" decrease and plaintiff would have the ability to "manipulate the sale." (*Id.*) Defendant does not further explain or elaborate upon these statements.

9

In reply, plaintiff asserts that defendant has offered no support for its assertion that it could sell the Policy within sixty days, particularly given that (1) defendant is not in the business of selling insurance policies, and (2) it took longer than sixty days for defendant to sell the Policy to plaintiff in the first instance. (Pl.'s Reply at 1-2.) Plaintiff also emphasizes defendant's admitted lack of assets and failure to make required premium payments in the past. (*Id.* at 2.) Plaintiff warns that if the "substantial premiums" are not timely paid, the Policy will lapse. (*Id.*) Finally, plaintiff asserts that it is "more likely than defendant to successfully sell the Policy for its true value," since plaintiff "has more experience buying and selling life insurance policies." (*Id.* at 4.)

## V. Modifications to the Report and Recommendation

### A. Ownership of the Policy

As noted above, the Court is loathe to consider plaintiff's arguments that were not presented to Judge Wall in the first instance. *Accord Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) (noting that "[s]ystemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round"). In plaintiff's proposed judgment, which was included with its original default motion papers, plaintiff indicated that it wished to retain ownership of the Policy until defendant paid any amounts ordered by the Court; plaintiff anticipated taking the necessary steps to have Transamerica change ownership of the Policy only after defendant's "timely tender" of the amounts ordered. (*See* Pl.'s Mot. for Default J., Ex. A.) Plaintiff, however, did not articulate to Judge Wall the reasons underlying this request, even though plaintiff had the opportunity to

supplement its submission after the default motion was referred for an inquest. (*See* Pl.'s Feb. 24, 2011 Letter (informing Judge Wall that "the explicit terms of the contract and the motion papers sufficiently explain the issues and the requested relief").)

It was only after Judge Wall issued the Report and Recommendations that plaintiff, citing the "complexity of the issues this case presents" (*see* Pl.'s Obj. at 1), more clearly set forth its request that defendant "be ordered to tender the repurchase price *before* regaining ownership of this valuable asset" (*see id.* at 6 (emphasis added)), and presented its underlying rationale for that request. Given that plaintiff had the opportunity to make these arguments directly to Judge Wall but, for whatever reason, did not, the Court would overrule plaintiff's objection if it was the only submission before the Court.

The Court faces a difficult predicament, however, because it has also received a submission from defendant, which essentially confirms that defendant will not have sufficient (or any) assets to pay a money judgment until it sells the Policy. (Def.'s Resp. at 1.) Ordinarily, the fact that a defendant might not be able to pay a judgment against it is of no moment to the Court; often in cases where a defendant defaults, the unfortunate reality is that the plaintiff is left holding a money judgment to be enforced against a judgment-proof defendant. This case is unique, however, because there is a valuable asset in play – the Policy – and defendant has already stated its intention to apply any proceeds from the sale of the Policy to satisfy the judgment against it. In order to sell the Policy, however, defendant must ensure that the Policy does not lapse by, *inter alia*, failing to pay the required premiums. Defendant's submission contains absolutely no assurances that it will pay, or attempt to pay, the admittedly substantial policy premiums as they come due. Moreover, defendant has admitted that it has "neglected" to

11

make at least one premium payment in the past. (*Id.* at 2.)  Given these admissions, the Court cannot, in good faith, simply sit back and allow defendant take title to the Policy and potentially squander this asset.  This is particularly true because Section 7(k) of the Agreement, which governs the repurchase of the Policy, is silent as to whether the transfer of ownership must precede payment of the repurchase price, or whether the reverse is true, or whether the transfer and payment are to occur simultaneously.

Accordingly, the Report and Recommendation is modified as set forth below.  The Court emphasizes that the following modification does not stem from any error on the part of Judge Wall.  Rather, the modification is necessary based on the information submitted to the Court by the parties only after the Report and Recommendation was issued.  Although the Court generally does not consider arguments presented to it that could have – and should have – been presented to the Magistrate Judge, the unusual nature of this case and the overall balance of equities warrants that an exception be made in this limited instance.

Accordingly, the Court hereby modifies Sections III.A.1 and III.D of the Report and Recommendation as follows:

Defendant is directed to tender the repurchase price, which (according to Section 7(k) of the Agreement) would include the amounts necessary to reimburse plaintiff for its premium payments, as well as the Termination Charge and pre-judgment interest, within thirty (30) days of the date of this Order.  In the interim, plaintiff is directed to execute (but not deliver) any and all documentation necessary to transfer ownership of the Policy from plaintiff to defendant.  Such executed documentation shall be held in escrow by defendant's counsel of record, the law firm of Harris Beach PLLC.  If defendant tenders the repurchase price within thirty (30) days of the date

of this Order, the executed change-of-ownership documents shall be released from escrow and delivered to defendant and Transamerica. The parties are to so inform the Court and the case will be marked closed.

If, however, defendant does not tender the required amounts within thirty (30) days of the date of this Order, plaintiff shall file a letter application to the Court. Upon receipt, such application shall be referred to Judge Wall so that he may oversee the sale of the Policy, with the goal of the sale being to garner proceeds to be applied toward satisfying the judgment against defendant. At that time, Judge Wall will determine: (1) Which party (either plaintiff or defendant) is in the best position to sell the Policy; and (2) The best method or procedure for effectuating the sale of the Policy, whether by auction or otherwise.[2]

### B. *Supplementation of the Award Based Upon Plaintiff's Ongoing Payment of Premiums*

Neither party objects to Judge Wall's recommended calculation of damages, interest, attorneys' fees, or costs. The Court has reviewed those recommendations for clear error and, finding none, concurs with Judge Wall's reasoning and result. Accordingly, Sections I, II, III.A.2, III.A.3, III.B, and III.C are adopted as if set forth herein.

Pursuant to the Report and Recommendation (*see* R&R at 9), plaintiff now requests damages be awarded for four additional premium payments it made on March 10, 2010, April 4, 2011, June 21, 2011, and September 10, 2011, which total $442,675.52. (*See* Pl.'s Obj. at 5;

---

[2] The parties have presented some argument on these issues in connection with their briefing of plaintiff's objections to the Report and Recommendation. They have, however, failed to supply the Court with any evidence regarding standard industry practice or provide support for their respective opinions about the best way to sell the Policy. Thus, the Court is not in a position to resolve these issues at this point.

Pl.'s Sept. 16, 2011 Letter.) Plaintiff has provided adequate documentary support for each of these asserted premium payments. Accordingly, plaintiff is awarded an additional $442,675.52 as reimbursement of these four premium payments.

Finally, Judge Wall recommended that plaintiff be permitted to submit updated calculations for pre-judgment interest (which he awarded at a rate of 9% in accordance with N.Y. C.P.L.R. § 5004) based upon any additional premiums paid. Accordingly, plaintiff is awarded the following interest on its four additional premium payments, calculated through September 30, 2011:

| Date of Premium Payment | Payment Amount | Interest Owed Through 9/30/2011 |
|---|---|---|
| 3/10/2010 | $115,000.00 | $16,134.66 |
| 4/4/2011 | $88,675.52 | $3,913.87 |
| 6/21/2011 | $110,000.00 | $2,739.45 |
| 9/10/2011 | $129,000.00 | $636.16 |
| **TOTAL:** | | **$23,424.14** |

As Judge Wall recommended, plaintiff will be permitted to submit updated calculations for additional interest on these payments that accrues through the entry of judgment. (*See* R&R at 9.)

## *CONCLUSION*

The Court therefore directs that plaintiff recover from the defendant the amount of $939,365.28, as itemized below, and that judgment be entered accordingly, with post-judgment interest to be calculated pursuant to 28 U.S.C. § 1961:

(1) $851,375.52 in compensatory damages for reimbursement of documented premiums paid by FLS, plus any additional documented premium payments made by FLS to maintain the Policy from the date of this Order through the earlier of the date on which ownership of the Policy is transferred back to defendant or the Policy is sold to a third party (*see* Section V.A, *supra*), and

(2) $64,095.61 for pre-judgment interest on premium payments made by FLS on the Policy, plus additional interest accruing through entry of judgment, plus any interest on additional post-judgment payment of premiums as set forth in subsection (1), above, and

(3) $5,000 Termination Charge, and

(4) $17,999.50 in attorneys' fees, and

(5) $894.65 in costs.

If defendant tenders the repurchase price (as described in Section V.A, *supra*) to plaintiff within thirty (30) days of the date of this Order, plaintiff is directed to deliver the executed change-of-ownership documents to defendant and Transamerica. If defendant does not tender the above amounts to plaintiff within thirty (30) days of the date of this Order, plaintiff is directed to file a letter application and commence the proceedings set forth in Section V.A of this decision. The Clerk of the Court is instructed not to close this case until directed by the Court. (*See* Section V.A, *supra*.)

**SO ORDERED.**

Dated: Central Islip, New York
September 22, 2011

/s/
Denis R. Hurley
United States District Judge